IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SHERRY D. SAUNDERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:07cv800-CSC |
| | ) | (WO) |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I.  Introduction**

The plaintiff, Sherry D. Saunders ("Saunders"), applied for supplemental security

income benefits pursuant to Title XVI, 42 U.S.C. § 1381, *et seq.*, alleging that she was unable

to work because of a disability.  Her application was denied at the initial administrative level.

Saunders then requested and received a hearing before an Administrative Law Judge ("ALJ").

Following the hearing, the ALJ also denied the claim.  The Appeals Council rejected a

subsequent request for review.  The ALJ's decision consequently became the final decision

of the Commissioner of Social Security ("Commissioner").[1]  *See Chester v. Bowen*, 792 F.2d

129, 131 (11th Cir. 1986).  The case is now before the court for review pursuant to 42 U.S.C.

§ 405(g) and § 1631(c)(3).  Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the

parties have consented to entry of final judgment by the United States Magistrate Judge.

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No.
103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social
Security matters were transferred to the Commissioner of Social Security.

Based on the court's review of the record in this case and the briefs of the parties, the court

concludes that the decision of the Commissioner should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the

person is unable to

> engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result in
> death or which has lasted or can be expected to last for a continuous period of
> not less than 12 months. . . .

To make this determination,[2] the Commissioner employs a five-step, sequential

evaluation process.  *See* 20 C.F.R. § 404.1520, §416.920.

> (1)  Is the person presently unemployed?
> (2)  Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments
> set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4)  Is the person unable to perform his or her former occupation?
> (5)  Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next
> question, or, on steps three and five, to a finding of disability.  A negative
> answer to any question, other than step three, leads to a determination of "not
> disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one.  This court

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI).  The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

must find the Commissioner's decision conclusive if it is supported by substantial evidence.

42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial

evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence

as a reasonable person would accept as adequate to support a conclusion."  *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971).  A reviewing court may not look only to those parts of the

record which support the decision of the ALJ but instead must view the record in its entirety

and take account of evidence which detracts from the evidence relied on by the ALJ.

*Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the
> reasonableness of the [Commissioner's] . . . factual findings . . . No similar
> presumption of validity attaches to the [Commissioner's] . . . legal conclusions,
> including determination of the proper standards to be applied in evaluating
> claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  Administrative Proceedings

Saunders was 54 years old at the time of the hearing before the ALJ.  (R. 115.)  She

is a high school graduate and has completed over one year of junior college.  (*Id.*)  Saunders

has little to no work experience.[4]  (R. 60-61, 73, 115.)  Saunders alleges that she became

disabled on January 1, 1990, due to neck and back pain, as the result of nerve damage,

sciatica, and myofascial pain syndrome.  (R. 72, 107, 117.)  Following the hearing, the ALJ

---

[4] The transcript indicates that Saunders does "a little bit of sewing . . . for different people . . . [m]aybe once  [or] twice a month" and worked as a substitute librarian on four occasions between 1978 and 1979.  (R. 73, 115) Tax records indicate that, since 1967, Saunders has earned a total of $144.  (R. 60-61.)

concluded that Saunders' impairments are not severe.  (R. 19-20.)  Accordingly, the ALJ

concluded that Saunders is not disabled.  (R. 20.)

## IV.  The Plaintiff's Claims

As stated by Saunders, she presents the following issues for the court's review:

1.      The Commissioner's decision should be reversed, because the
        ALJ committed reversible error at step two of the sequential
        evaluation process.

2.      The Commissioner's decision should be reversed, because the
        ALJ failed to fulfill his duty to develop the record.

3.      The Commissioner's decision should be reversed, because the
        ALJ committed reversible error in failing to re-contact Saunders'
        medical provider as required by 20 C.F.R. § 404.1512(e).

(Doc. No. 13, p. 5.)

## V.  Discussion

### A.  Sequential evaluation beyond Step Two

Saunders argues that the ALJ failed to pursue the sequential evaluation beyond Step

Two of the analysis.  In his analysis, the ALJ found that the "objective medical evidence fails

to establish the existence of a medically determinable impairment that could reasonably be

expected to produce the claimant's symptoms."  (R. 19.)  As a result, the ALJ concluded at

Step Two of his evaluation that Saunders is not disabled.  (*Id*.)  In reaching his conclusion,

the ALJ specifically found as follows:

> The claimant alleges disability due to back and neck pain
> radiating to extremities with numbness and fatigue.  The record
> contains no objective medical evidence of a physiological
> abnormality reasonably likely to result in the alleged symptoms.
> There are no x-rays, MRI studies, nerve conduction studies, or

other medically acceptable diagnostic tests.  The claimant sought treatment with William H. Childs, M.D. in April 2006.  Upon examination, Dr. Childs noted no tenderness of the neck and full cervical range of motion.  Examination of bilateral upper and lower extremities was normal with no tenderness to palpation, normal joint stability, normal range of motion, normal motor strength and function, and no crepitus or pain with motion. Sensation, gait and station were normal.  The only positive exam findings were tenderness to palpation in the lumbar region, and absent left knee reflex.  Based on these findings, Dr. Childs' diagnosed "cervical disorder" and "muscle spasm."   He prescribed no medication or treatment and advised the claimant to call or return in symptoms worsen or persist.  The record contains no evidence of a follow up visit. . . .

The undersigned has considered and rejects a Physical Capacities Evaluation and Clinical Assessment of Pain form completed by Dr. Childs in January 2007. . . .  His conclusions regarding the claimant's functional limitations are inconsistent with his essentially normal examination findings and no prescribed treatment.  The Administrative Law Judge determined that a consultative exam was not warranted based on the record as a whole and the absence of any significant findings in Dr. Childs' report.

The undersigned notes no evidence of any additional treatment, including medication or hospitalization, except for some chiropractic treatment in January 2000. . . .  Although the claimant alleges that she has been disabled since 1990, she did not seek medical treatment for her condition even during earlier years when she had money from her parents' savings and investments. Moreover, the claimant reports a virtually unlimited range of daily living activities, including sewing, driving, shopping, housework, and aerobic exercise.  She drives 22 miles to spend the day with her mother in the nursing home three days per week.  During her visits, the claimant sews, embroiders, decorates the room, takes care of her mother's grooming needs, assists her mother with exercises, sets up exercise equipment for her mother, and takes care of nursing home business. . . .

(R. 19-20.)

The severity step is a threshold inquiry which allows only "claims based on the most trivial impairment to be rejected." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). Indeed, a severe impairment is one that is more than "a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *Bowen v. Yuckert*, 482 U.S. 137, 154 n. 12 (1987) (citing with approval Social Security Ruling 85-28 at 37a).

A physical or mental impairment is defined as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."   42 U.S.C. § 1382c(a)(3)(c).  The plaintiff has the "burden of showing that [her] impairments are 'severe' within the meaning of the Act."  *McDaniel*, 800 F.2d at 1030-31.   Once the plaintiff establishes that she suffers from a severe impairment, the ALJ is not entitled to ignore that evidence.  In finding that Saunders did not have a "severe impairment," the ALJ reviewed Saunders' medical records to ascertain whether there was a medically determinable impairment that could be expected to produce Saunders' symptoms.  A review of the record demonstrates that the ALJ's determination that Saunders does not suffer from a severe impairment is supported by substantial evidence.  "Unless the claimant can probe, as early as step two, that she is suffering from a severe impairment, she will be denied disability benefits."  *Id*. at 1031.

After carefully reviewing the medical records, the court concludes that the ALJ did not err in finding Saunders did not suffer from a "severe impairment" as will be made clear in the

discussion of the remaining issues.

## B.  The Plaintiff's Treating Physician

Saunders complains that the ALJ failed to properly credit the opinion of her treating physician, Dr. Hayden Childs.  The law is well-settled; the opinion of a claimant's treating physician must be accorded substantial weight unless good cause exists for not doing so.  *Jones v. Bowen,* 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985).  However, the weight afforded to a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to the claimant's impairment.  *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986).  The ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983).  The ALJ must articulate the weight given to a treating physician's opinion and must articulate any reasons for discounting the opinion.  *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987).

The medical records indicate that Saunders went to Dr. Childs, an internist, in search of treatment for bilateral lower back pain and neck pain on one occasion in April 2006.  (R. 109.) During the exam, Saunders complained of bilateral lower back pain; however, she also denied suffering from any fatigue, malaise, body aches, neck stiffness, joint pain, muscle pain, anxiety, or depression.  (R. 110.)  Dr. Childs' examination indicated that Saunders' cervical range of motion, as well as the range of motion of her upper and lower extremities, were normal.  (R. 110-11.) The internist noted that Saunders' had "tenderness to palpation present-lumbar region" and "left knee reflex 0, right knee reflex 2+."  (R. 111.)  Dr. Childs diagnosed Saunders as

suffering from cervical disorder and muscle spasm and recommended that she call or return to

the clinic if her symptoms worsened or persisted.  (*Id*.)  There are no medical records indicating

that Saunders returned to the clinic for additional treatment. The following year, on January 22,

2007,  Dr. Childs completed a physical capacities evaluation form, in which he concluded that

Saunders' physical limitations would prevent Saunders from working at least two days per

month because her "myofascial pain syndrome var[ies] from day to day."  (R. 107.)

The ALJ, however, found that Dr. Childs' conclusions regarding Saunders' "functional

limitations are inconsistent with his essentially normal examination findings and no prescribed

treatment." (R. 20.)  After conducting an independent review of the record, the court concludes

that Dr. Childs' opinion is not supported by the medical evidence of record and the ALJ did

not err as a matter of law in rejecting the conclusory opinion of Dr. Childs.  During the April

2006 exam, Saunders denied suffering from muscle pain, fatigue, depression, or other

potentially disabling symptoms.  Moreover, other than noting that Saunders' back was

"tender" and that she had a left knee reflex score of 0, all of Dr. Childs' findings were normal.

In addition, there is an absence of any evidence indicating that Saunders was prescribed pain

medication or other treatment for her complaints of bilateral lower back pain and neck pain.

There are also no x-rays or other objective medical records in the record indicating that

Saunders' suffers from a severe impairment.

This court recognizes that myofascial pain syndrome, like fibromyalgia, has been

recognized as a potentially severe impairment that may support a claim of disability.  *See*

*Gonzalez v. Astrue*, 537 F. Supp. 2d 644, 665 n. 10 (D. Del. 2008); *Rivera v. Barnhart*, 2006

WL 1227276, at *7 n. 118 (S.D.N.Y. 2006); *Brunson v. Barnhart*, No. 01-CV-1829 (ERK), 2002 WL 393078, at *16 (E.D.N.Y. March 14, 2002).  Because there are no clinical tests which test for the presence or severity of the condition, an ALJ cannot reject a physician's diagnosis of myofascial pain syndrome.  *Brunson*, *supra*.  However, in Saunders' case, there are no diagnoses included in the record which indicate that Saunders suffers from any severe impairments.  *Cf.  Wiley v. Astrue*, No. 8:06cv1178-T-EAJ, 2007 WL 2208827, *4 (M.D. Fla. July 27, 2000) (where ALJ found only references to a history of fibromyalgia in the medical records, ALJ declined to find that condition as a basis for her complaints of severe chronic pain, absent an evaluation from a rheumatologist).  Although there is one isolated reference to myofascial pain syndrome in the physical capacities evaluation form, there is no diagnosis of this syndrome or any recommendations for treatment in the medical records.  More importantly, the April 2006 examination, in which Saunders reported that she does not suffer from fatigue, neck stiffness, joint pain, muscle pain, anxiety, or depression, indicates that any abnormality resulting from such a condition had no more than a minimal effect on Saunders' abilities.[5]  *See Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984).

---

[5] Myofascial pain syndrome is an "irritation of the muscles and fascia of the back and neck causing acute and chronic pain not associated with neurologic or bony evidence of disease." *Brunson v. Barnhart*, No. 01-CV-1829 (ERK), 2002 WL 393078, at *16 (E.D.N.Y. March 14, 2002) (citation omitted).

> Patients with myofascial pain syndrome (MPS) have regional pain and tenderness involving specific muscles and their associated fascia (a sheath of connective tissue that wraps around muscle groups).  The syndrome is diagnosed on the basis of trigger points, or areas of hyperirritability in a muscle or its associated fascia that are tender on compression and may cause referred pain and tenderness as well as remote autonomic phenomena.  Active tender points may produce pain during normal daily activities as well, whereas latent tender points reproduce pain with palpation but not during normal daily activities (Aronoff, 1988). . . .

Given the lack of objective medical records indicating that Saunders suffers from a severe impairment, the court concludes that the ALJ's finding that "the record contains no objective medical evidence of a physiological abnormality reasonably likely to result in the alleged symptoms" and that there "are no x-rays, MRI studies, nerve conduction studies, or other medically acceptable diagnostic tests" is supported by substantial evidence. Furthermore, in light of medical records indicating that Saunders reported to her physician that she does not suffer from a variety of physical and mental indicators, as well as the absence of any recommended treatment for her alleged conditions, the court concludes that the ALJ's determination that Saunders does not suffer from a severe impairment is supported by substantial evidence. Moreover, there is no indication that the ALJ substituted his own judgment for that of Dr. Childs' opinions. Consequently, the ALJ did not err as a matter of law in rejecting Dr. Childs' opinion that Saunders' impairments are of such severity as to prevent her from performing work.

### C. The Duty to Develop the Record

An ALJ has a duty to fully and fairly develop the record. *See e.g. Lucas*, *supra*; *Kelley v. Heckler*, 761 F.2d 1538 (11th Cir. 1985). Where a consultative evaluation is needed to make an informed decision, it is error for an ALJ not to order such an evaluation. *Reeves v. Heckler*, 734 F.2d 519 (11th Cir. 1984).

---

Muscle trauma, overload, or strain is considered the cause, or "activating factor," of MPS, and treatment or resolution of those factors can affect whether the patient improves or the disorder becomes chronic. . . .

Roscoe N. Gray, M.D., Attorneys' Textbook of Medicine ¶ 176.39(3) (3rd ed. 2005).

Saunders argues that the ALJ erred by failing to order a consultative evaluation.  The

regulations do not require the Commissioner to secure a consultative evaluation, nor do they

create a right to a consultative examination.  The ALJ is not required to order a consultative

examination unless the record demonstrates that an examination is necessary for the ALJ to

render a decision.  *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988).  The record

clearly contains sufficient evidence from which the ALJ could determine Saunders' level of

physical functioning as evidenced by her own comments to her physician on the single

occasion she presented for treatment, as well as her own reports of daily activities.  Thus, the

court concludes that, on this record, the ALJ did not err by failing to secure a consultative

evaluation.[6]

## D.  The Duty to Resolve Inconsistencies in the Record

Saunders contends that the ALJ should have contacted Dr. Childs concerning the basis

of his medical opinion regarding her limitations.  Specifically, she asserts that an ambiguity

exists because Dr. Childs' notation in the residual functional evaluation form indicating that

Saunders is afflicted with myofascial pain syndrome is inconsistent with his prior

---

[6] In a footnote, Saunders argues that a consultative examination should have been ordered because her lawyer argued that "she doesn't have any resources" and therefore "there has been zero consultative exams done." (Doc. No. 13, n. 6; R. 130-31.)  To the extent Saunders asserts that the ALJ failed to consider her inability to afford treatment for her alleged conditions, the court concludes that the ALJ properly considered her financial ability to afford treatment. This court recognizes that poverty excuses non-compliance with prescribed medical treatment or the failure to seek treatment.  *Dawkins v. Bowen*, 848 F.2d 1211 (11th Cir. 1988).  It is arguable that Saunders did not seek treatment due to her general dislike for the medical community.  During the hearing, Saunders stated that "one reason probably that I haven't seen a doctor, I hate to see the doctor anyway, but I don't have insurance has a lot to do with it, but I've just never been one to give in to pain and . . . run to the doctor every time." (R. 130.) More importantly, Saunders testified that "up until recently" she used money from a CD owned by herself and her mother to pay for her needs. (R. 120.) Thus, the ALJ's finding that Saunders "did not seek medical treatment for her condition even during earlier years when she had money from her parents' savings and investments" is supported by substantial evidence.

11

assessments.  She argues the ALJ erred in failing to ask Dr. Childs to provide additional evidence which would clarify whether she suffers from myofascial pain syndrome or other disorders.

A disability claimant bears the initial burden of demonstrating an inability to return to her past work.  *Lucas v. Sullivan* 918 F.2d 1567 (11th Cir. 1990).  In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1) objective medical facts or clinical findings, (2) diagnoses of examining physicians, (3) subjective evidence of pain and disability, e.g., the testimony of the claimant and his family or friends, and (4) the claimant's age, education, and work history.  *Tieniber v. Heckler*, 720 F.2d 1251 (11th Cir. 1983).

Saunders has provided the court with the following records: (1) four visits to a chiropractor in January 2000, in which she reported that her back and leg pain improved as the result of treatment; (2) a medical record of one doctor's visit in April 2006, in which she was diagnosed as suffering from cervical disorder and muscle spasm, and (3) one residual functional capacity evaluation form completed by the physician who treated her on one occasion.  There is one isolated reference to myofascial pain syndrome in the residual functional evaluation form; however, there is no diagnosis of this syndrome by a treating physician or a specialist included in the medical records.  As previously discussed, although Saunders reported to Dr. Childs that she suffered from bilateral lower back pain which radiated down her leg, she also denied suffering from fatigue, neck stiffness, and joint or muscle pain. (R. 109-10.)  The court also notes that, in a daily activities questionnaire,

Saunders indicated that she carefully performs step aerobics, that she drives her car 22 miles to her mother's nursing home at least three days a week, and that she does not need breaks when performing a task or chore.  (R.  87, 89, 90.)  In addition, during the hearing before the ALJ, Saunders testified that she "does a little exercise to try to keep in as good as shape as possible," that she takes no medication, and that she does not receive treatment from Dr. Childs or any other physician on a regular basis.  (R. 120-21.)  Based on the lack of medical records indicating that Saunders received treatment for myofascial pain syndrome, her reports to her physician that she does not suffer from fatigue, neck stiffness, joint pain or muscle pain, and her application and testimony indicating that she performs a variety of tasks, including step aerobics, the court concludes that the ALJ's determination that Saunders fails to satisfy the initial burden of demonstrating an inability to return to her past work.  Because Saunders failed to overcome the initial step of demonstrating that she suffers from a severe impairment, the ALJ was under no obligation to request additional evidence from Dr. Childs.  This court therefore concludes that the ALJ did not err as a matter of law and that the ALJ's decision to deny benefits is supported by substantial evidence.

## VI.  Conclusion

Based on the foregoing, the decision of the Commissioner is due to be affirmed.  A separate final judgment will be entered.

Done this 6th day of June, 2008.

                        /s/Charles S. Coody
                        CHARLES S. COODY
                        UNITED STATES MAGISTRATE JUDGE